UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

JASON FOSTER

CRIMINAL ACTION

NO. 12-117-JJB-SCR

### RULING ON DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on a Motion (doc. 12) to Suppress Warrantless Search and Seizure by Defendant Jason Foster ("Foster"). The Defendant is charged with possessing several rounds of .40 caliber Hornday ammunition and a firearm while having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). The Defendant moved to suppress the items seized in the warrantless search of his residence and statements made following the same. The Government filed a Response (doc. 14) in Opposition to the Defendant's motion to suppress. A suppression hearing was held on July 25, 2013. Thereafter, Defendant filed a post-hearing Memorandum (doc. 22) in Support, to which the Government filed a post-hearing Memorandum (doc. 26) in Opposition. For the reasons stated herein, the Defendant's Motion (doc. 12) to Suppress Warrantless Search and Seizure is **GRANTED**.

#### Background

The Court makes the following findings of facts based upon evidence presented at the July 25, 2013 suppression hearing, where the parties presented testimony from Officer Nick Jurasinski and Mrs. Angela Foster. On March 13, 2012, officers executed an arrest/parole warrant at 602 River South Way. The house was listed in the name of Mrs. Angela Foster, who was married to and living with the Defendant, Jason Foster. Upon arriving at the residence, officers knocked on the front door, but no one immediately answered. After beginning to leave, officers noticed an individual peeking through the home's window. The officers returned to the

1

residence and knocked again, at which point, Mrs. Angela Foster answered the door. Upon opening the door, officers told Mrs. Foster that they had an arrest warrant for the Defendant. After Mrs. Foster swung her screen door open and officers determined that Defendant was located in the bedroom, the responding officers entered the home and two officers proceeded to the bedroom. Upon reaching the bedroom, the officers placed Defendant under arrest.

Immediately after arresting the Defendant, the officers brought him out of the bedroom and sat him on the couch. At that point, the officers conducted a "protective sweep" of the premises to ensure their safety. While conducting the sweep, officers located Mrs. Foster's 18-year-old son upstairs, who was then brought downstairs and seated on the couch. In the meantime, one of the officers pulled Mrs. Foster outside in order to speak to her. The officer asked Mrs. Foster if they could search the residence. Initially, Mrs. Foster refused to grant permission for the search, at which point Mrs. Foster was informed that the officers would simply remain at her home until they procured a search warrant. As a result, Mrs. Foster signed the "consent to search" form, and at some point thereafter, the Defendant affixed his signature to that same document.

During their search, officers located a safe in the couple's bedroom. After initially stating that there was no gun located within the home, Mrs. Foster relented and informed officers that there was a gun in the safe, but that it belonged to her. After initially attempting and failing to pry the safe open with a knife, the officers subsequently gained access the safe's content through using a key located on Mrs. Foster's key ring, which officers found in the bedroom. In the safe, the officers located the gun that is the subject of the present indictment—a Star, model Firestar, .40 caliber bearing serial number 2084381. (*See* Doc. 1). Officers also located: (1) a box containing two rounds of .40 caliber ammunition on the dresser in the bedroom, (2) a glass jar

containing a small amount of suspected cocaine, (3) a Styrofoam cup containing suspected codeine syrup, and (4) a bag filled with money behind the washing machine. Because he had previously been convicted of a felony, Defendant was indicted for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

**Analysis**

After reviewing the parties pre- and post-hearing memorandums, it is apparent that the two primary issues for review are as follows: (1) "[w]hether the warrantless entry into the home was a violation of the 4th Amendment to the Constitution of the United States"; and (2) [w]hether the purported consensual search was in keeping with the principles of the 4th Amendment to the Constitution of the United States." (Doc. 22, p. 3). The court will analyze these issues seriatim.

1. <u>Warrantless Entry of the Premises</u>

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. "Warrantless searches and seizures inside a home are presumptively unreasonable, but because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010) (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)) (internal quotation marks omitted). "An arrest warrant 'founded on probable cause' that the suspect has committed a crime gives law enforcement officers 'the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" *United States v. Thomas*, 429 F.3d 282, 288 (D.C. Cir. 2005) (quoting *Payton v. New York*, 445 U.S. 573, 603 (1989)). "The Fifth Circuit follows the majority of courts of appeals requiring only reasonable belief rather than probable cause." *United States v. Davy*, 2013 WL 4083312, *4

(S.D. Tex. Aug. 1, 2013) (citing *United States v. Route*, 104 F.3d 59, 62 & n.3 (5th Cir. 1997); *United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005)). "Like 'reasonable suspicion' or 'probable cause' the requirement that an officer have a 'reasonable belief' is not a finely-tuned standard." *United States v. Barrera*, 464 F.3d 496, 500 (5th Cir. 2006) (citing *Ornelas v. United States,* 517 U.S. 690, 696 (1996)). "'Reasonable belief' can only be ascertained through a weighing of the facts in the record, as it is a 'fluid concept[ ] that takes [its] substantive content from the particular contexts in which the standard[ ] [is] being assessed.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)).

In the present matter, the officers possessed an arrest warrant when they went to the Defendant's home. (Doc. 19, p. 7, lines 13−21; p. 15, lines 11−15; p. 53, lines 4−5). Accordingly, the officers could enter the home to arrest Defendant provided they had a "reasonable belief" that Defendant was within the premises. *See Thomas*, 429 F.3d at 288. While the officers did not have absolute certainty that the Defendant was on the premises on March 13, 2012, this Court finds that the officers had at least a reasonable belief that the Defendant was within the premises. First, as Officer Jurasinski testified at the suppression hearing, Agent A.J. Lugo from the Bureau of Alcohol, Tobacco, Firearms and Explosives—who participated in the arrest—"knew that [Defendant] would be located at" the premises on that day. (Doc. 19, p. 6, lines 15−23). Furthermore, Officer Jurasinski testified that Agent Lugo had also seen Defendant at the premises earlier that day. (Doc. 19, p. 16, lines 19−21). Moreover, "as far as the parole department was concerned," the house at 602 River South Way was Defendant's residence. (Doc. 19, p. 16, line 22 through p. 17, line 1). Finally, the officers knew that at least one individual was present in the home, as they could see someone peeking through the window prior to knocking on the door a second time. (Doc. 19, p. 8, lines 5−23).

4

While Officer Jurasinski acknowledged that he was not absolutely certain that the Defendant was on the premises, the standard is not complete certainty. Rather, the standard is a "reasonable belief." Based on the totality of circumstances, it cannot be said that the responding officers did not possess at least a "reasonable belief" that Defendant was located in the premises at the time of executing the arrest warrant. Accordingly, based on the foregoing, this Court finds that the responding officers had at least a "reasonable belief" that Defendant was in the premises, and therefore, they could enter the premises to effect the arrest of Defendant.

2. <u>Search of the Premises</u>

The primary issue in this case is whether the Defendant and Mrs. Foster voluntary consented to the warrantless search of their home that resulted in the discovery of the gun that is the subject of the present indictment. At the time of conducting the search, the officers plainly did not have a search warrant and there does not otherwise appear to be exigent circumstances justifying a warrantless search.[1] Nevertheless, the officers were able to procure the signatures of both Mrs. Foster and the Defendant on a "consent to search" form. However, the principal issue is whether their consent to the search was free and voluntary, so as to validate the officers' warrantless search of the home.

"Warrantless searches of a person's home are presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the search." *United States v. Gomez-Moreno*, 479 F.3d 350, 354 (5th Cir. 2007) (citing *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001)). "The burden is on the government to establish circumstances

---

[1] At the suppression hearing, the only witness called by the Government—Officer Jurasinski—could not provide any basis for probable cause, any belief that a crime was afoot, or any belief that contraband was present in order to search the premises prior to ascertaining the purported consent of the Defendant and Mrs. Foster. The police report in this matter indicates that officers located contraband *subsequent* to conducting their search of the residence. While Officer Jurasinski contends that the contraband was found in plain view prior to the search, that is not what the police report indicates, and the fact that the officers felt it necessary to procure a "consent to search" form further countervails this assertion.

justifying a warrantless search." *Id.* "To be valid, consent to search must be free and voluntary." *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993) (quoting *United States v. Olivier–Becerril*, 861 F.2d 424, 425 (5th Cir. 1988)) (internal quotation marks omitted). "The voluntariness of consent is 'a question of fact to be determined from the totality of all the circumstances.'" *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). The Fifth Circuit utilizes six factors to determine whether consent is voluntary:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Olivier–Becerril*, 861 F.2d at 426 (citing *United States v. Galberth*, 846 F.2d 983, 987 (5th Cir. 1988)). "[A]lthough all of the above factors are highly relevant, no one of the six factors is dispositive or controlling of the voluntariness issue." *Galberth*, 846 F.2d at 987.

In the present situation, both Defendant and Mrs. Foster signed the purported "consent to search" form. "The Fourth Amendment recognizes a valid warrantless . . . search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990); *United States v. Matlock*, 415 U.S. 164 (1974)). Nonetheless, after reviewing the totality of the evidence, this Court finds that Mrs. Foster did not give free and voluntary consent to the warrantless search of her home. At the hearing in this matter, the Government only presented the testimony of Officer Jurasinski. However, Officer Jurasinski was not the individual who induced Mrs. Foster's to sign the form. In fact, Officer Jurasinski did not even witness the form being signed and did not know any details regarding the circumstances

6

surrounding the signing of the form. (*See* Doc. 19, p. 28, lines 4−15). In reality, according to Mrs. Foster, "Officer A.J." was the individual who spoke with her regarding providing consent to the warrantless search of the premises. Based on the uncontradicted testimony, Mrs. Foster refused at the outset to consent to the warrantless search. (Doc. 19, p. 43, lines 9−17; p. 44, lines 8−12). Yet, "Officer A.J." proceeded to tell Mrs. Foster that the officers would remain there until they were able to procure a search warrant, at which point, Mrs. Foster signed the form. (Doc. 19, p. 43, lines 9−17; p. 44, lines 5−12; p. 55, lines 14−18). At no point did "Officer A.J." inform Mrs. Foster that she did not have to provide consent or explain any of her rights related to the request for consent. (Doc. 19, p. 57, line 19 through p. 58, line 1).

The Government did not present any testimony to contradict Mrs. Foster, and this Court adopts Mrs. Foster's rendition of the facts surrounding the signing of the "consent to search" form. Mrs. Foster initially and adamantly refused to consent to the search. As a result, "Officer A.J." proceeded to convey to Mrs. Foster that it would be useless to resist, because the officers would simply wait there until they received a search warrant. Sensing the futility of the situation, Mrs. Foster signed the so-called "consent to search" form.

Looking at the six factors the Fifth Circuit utilizes to evaluate the voluntariness of consent, it is readily apparent that Mrs. Foster's consent was far from voluntary. First, the undisputed testimony is that "Officer A.J." utilized a seemingly coercive tactic to convey to Mrs. Foster that it would be useless to deny consent, as the officers would simply remain there until procuring a search warrant. At the time of obtaining her signature, the officers had separated Mrs. Foster from the Defendant by removing Mrs. Foster from her home. (Doc. 19, p. 44, line 8 through p. 45, line 4). Furthermore, Mrs. Foster was not cooperating with officers at the time, as she initially refused to provide consent, and only relented upon the officer's insinuation that it

would be useless to refuse. The officer never informed Mrs. Foster of her right to refuse consent or any of her other rights related to the request for consent. Finally, Mrs. Foster did not voluntarily place herself in the situation; she was thrust into it as a result of officers entering her home to arrest her husband. Accordingly, based on the totality of the circumstances, this Court finds Mrs. Foster's consent to the warrantless search of her home was not free and voluntary, despite her signature on the purported "consent to search" form.

Nonetheless, the Defendant's signature also appears on the "consent to search" form, and would be sufficient to justify the warrantless search of the premises, provided that it was freely and voluntarily provided to the officers. However, at the suppression hearing, the Government failed to present a modicum of evidence concerning the voluntariness of Defendant's consent to the search, other than a signature on an ostensible "consent to search" form that has already had the value of one of its signatures discredited. As aforementioned, "[t]he Government bears the burden of showing that a warrantless search or seizure was valid." *United States v. El-Mezain*, 664 F.3d 467, 540 (5th Cir. 2011). The lack of testimony from the individual who secured both Mrs. Foster's and Defendant's signature is inexplicable. Instead, this Court is left with only a signature on a form that has already had its effectiveness called into question. Accordingly, because the Government failed present any evidence regarding the voluntariness of the Defendant's consent, and thus, to meet its burden of proof regarding the justification for the warrantless search, this Court finds that the warrantless search violated the Fourth Amendment, and the evidence seized as a result of it must be suppressed.

**Conclusion**

Consequently, Defendant Jason Foster's Motion (doc. 12) to Suppress Warrantless Search and Seizure is **GRANTED**. Any evidence secured, items seized, or statements made as a result of the warrantless search are suppressed.

Signed in Baton Rouge, Louisiana, on November 15, 2013.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**